# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SOLOMON J. VERDIN, JR. (#308501)**                          **CIVIL ACTION NO.**

**VERSUS**                                                                              **24-914-SDD-EWD**

**TIFFANY PREVOST, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 12, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SOLOMON J. VERDIN, JR. (#308501)**      **CIVIL ACTION NO.**

**VERSUS**      **24-914-SDD-EWD**

**TIFFANY PREVOST, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Amended Complaint of Plaintiff Solomon J. Verdin, Jr. ("Verdin"), who is representing himself and who is confined at the Dixon Correctional Institute in Jackson, Louisiana.[1] Based on the screening permitted by 28 U.S.C. § 1915(e), and required by 28 U.S.C. § 1915A, it is recommended that Verdin's federal claims be dismissed with prejudice for failure to state a claim, that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, and that this case be closed.

### I. BACKGROUND

Verdin filed this lawsuit against multiple defendants under 42 U.S.C. § 1983, alleging various violations of his constitutional rights ranging from retaliation to failure to protect.[2] On May 13, 2025, Verdin was ordered to file an amended complaint to provide additional facts in support of his claims.[3] Verdin timely filed his Amended Complaint.[4] He requests monetary and injunctive relief.[5]

---

[1] R. Doc. 8. This is the operative Complaint for this action. *See* R. Doc. 7.

[2] *See* R. Docs. 1 & 8. Documents filed into the court record are referred to as "R. Doc. __."

[3] R. Doc. 7.

[4] R. Doc. 8.

[5] R. Doc. 8, p. 4.

## II. LAW & ANALYSIS

### A. Standard of Review

This Court may dismiss a claim by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been given permission to file suit without prepaying the filing fee ("IFP status"), if the claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[6] Because Verdin has sued government officials and has been given IFP status, his case is subject to screening. The screening process gives the court the ability early in the case to separate those claims that may have merit from those that lack a basis in fact or in law. Dismissal of any claim that does not pass screening may be made before service of process or before any defendant has answered the suit.

To determine whether a complaint fails to state a claim for purposes of screening under §§ 1915(e) and/or 1915A, courts apply the same standard used for dismissal under Federal Rule of Civil Procedure 12(b)(6).[7] This means the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff (here, Verdin).[8] To survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[6] 28 U.S.C. §1915(e) provides for dismissal of claims that are frivolous, malicious, or fail to state a claim where the plaintiff was granted IFP status. 28 U.S.C. §1915A provides for dismissal of claims by prisoners against a governmental entity or employee of a governmental entity for the same reasons regardless of the pauper status of the plaintiff. Verdin was granted IFP status on November 5, 2024. R. Doc. 3. Therefore, both statutes apply.

[7] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6)).

[8] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

alleged."[10]  To avoid dismissal, a complaint must contain enough factual information to raise a reasonable expectation that discovery will provide evidence of each element of the plaintiff's claim.[11]

### B. Verdin has Not Stated a Claim for Failure to Protect

Under the Eighth Amendment, a prisoner has a constitutional right to be protected from the threat of harm or violence by other inmates.[12] Generally speaking, prison officials "have a duty… to protect prisoners from violence at the hands of other inmates."[13] However, "[they] are not… expected to prevent all inmate-on-inmate violence."[14]

"Deliberate indifference" is the standard applied in evaluating a failure to protect claim. This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[15]  An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[16]  A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to avoid it.[17]  In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be

---

[10] *Id.*

[11] *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 255-57 (5th Cir. 2009).

[12] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).

[13] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[14] *Adames v. Perez*, 311 F.3d 508, 512 (5th Cir. 2003).

[15] *Farmer*, 511 U.S. at 837.

[16] *Id.*

[17] *Id.* at 847.

protected from such harm.[18] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[19] Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[20] Deliberate indifference requires a level of awareness of a specific risk based on specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[21]

"A paramount inquiry for a failure to protect claim is whether the defendant had knowledge of a specific threat posed by one inmate to another."[22] In this case, Verdin's claims fail to establish any defendant had knowledge of a specific threat posed by any particular inmate before the situation giving rise to his claims. Verdin alleges very generally that he has sought protective custody since May 2024 because he was "verbally threatened by several offenders" after advising officials that inmates Scout Houston and Kelvin Rushing were distributing narcotics.[23] Verdin alleges that other "unknown offenders" continued to threaten Verdin with physical harm.[24] Verdin alleges he advised security that he could not live safely on the unit. Later, he alleges other threats were made by offender Manuel Meek because Meek viewed Verdin as a confidential informant.[25]

---

[18] *Johnston*, 786 F.2d at 1259.

[19] *Farmer*, 511 U.S. at 837.

[20] *Id*., at 838. *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), citing *Farmer*, 511 U.S. at 838.

[21] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019). *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

[22] *See Mitchell v. Thomas*, No. 17-90, 2017 WL 11628577, at *6-7 (M.D. La. Nov. 21, 2017).

[23] R. Doc. 8, pp. 7-8.

[24] R. Doc. 8, p. 8.

[25] R. Doc. 8, p. 8.

Despite an opportunity to amend, Verdin does not provide details supporting a failure to protect claim. Rather, he still makes allegations of general dangerousness, and while he does note some specific threats made by some specific offenders, such as Meek, he makes no allegations that these offenders assaulted him. Importantly, Verdin fails to identify a specific offender who posed a threat to him and then attacked him; *i.e.* that officials failed to prevent an attack by an offender whom officials knew posed a significant threat to Verdin. Rather, the two "attacks" occurring in 2024 consisted of a slap on the back by an unnamed inmate[26] and a punch by "another unknown offender."[27]

Verdin cannot demonstrate that any defendant failed to protect him from these two "attacks" because he cannot demonstrate that any defendant knew the specific person who attacked Verdin posed a threat to him, as he has failed to identify his attackers.[28] It is impossible for an inmate to assert a failure to protect claim before he suffers physical injury caused by the particular inmate who officials should have known posed an unreasonable risk of harm to the plaintiff, as physical injury is a necessary component of a failure to protect claim.[29] In other words, a failure to protect claim is not ripe until there has been a true failure to protect resulting in physical injury. Thus, Verdin's complaints of persistent threats made are not sufficient to support a failure to

---

[26] R. Doc. 8, p. 8.

[27] R. Doc. 8, p. 11.

[28] *See Coleman v. LeBlanc*, No. 19-395, 2020 WL 4679545 at *4 (M.D. La. July 28, 2020) (dismissing claim for failure to protect where plaintiff had alleged general dangerousness, so his claim lacked information regarding a specific threat as required for a claim of failure to protect).

[29] *Wolters v. Federal Bureau of Prisons*, 352 Fed.Appx. 926, 927-28 (5th Cir. 2009) ("Wolters cannot prevail on his failure-to-protect claim because he does not allege that he suffered an actual physical injury resulting from prison officials' purported failure to protect.").

protect claim,[30] and he has not drawn a connection between the "attacks" that did occur and the threats that were made. Thus, the failure to protect claim is subject to dismissal.[31]

### C. Verdin has Not Stated a Claim for Retaliation[32]

Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a state penal institution.[33] To state a claim for retaliation, a prisoner must allege the following: (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[34] The inmate must allege more than a mere personal belief that he is the victim of retaliation.[35] Furthermore, the inmate "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred."[36]

---

[30] *Bass v. Blount*, No. 18-75, 2019 WL 4197599, at *1 (S.D. Miss. Sept. 4, 2019) ("Plaintiff's allegation of ongoing threats from other inmates fails to state a failure to protect claim.").

[31] To the extent Verdin complains of a failure to protect as a result of the February 2025 attack, he must state that claim in a new suit, as the claim arose after the filing of this complaint and would be subject to dismissal as unexhausted pursuant to 42 U.S.C. § 1997e.

[32] Though Verdin states that he was written up for multiple rule violations, it does not appear that he is alleging he was falsely written up or written up in retaliation for some act. *See* R. Doc. 8, p. 8. Nor does it appear he intends to state a retaliation claim because he was advised he could not be transferred while he had ARPs pending. R. Doc. 8, p. 11. This particular claim sounds more in a denial of access to the courts, but it does not appear Verdin is attempting to make that claim either, and if he was, he has not stated sufficient facts for a claim of denial of access to the courts. Even if Verdin is attempting to make these claims in this action, they would be subject to dismissal without prejudice as improperly joined pursuant to Rules 18 & 20 of the Federal Rules of Civil Procedure.

[33] *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

[34] *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999).

[35] *Mitchell*, 2017 WL 11628577, at *4 (M.D. La. Nov. 21, 2017), citing *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

[36] *Woods*, 60 F.3d at 1166.

Verdin first asserts that "[e]ach defendant…continues to not only retaliate against me by still keeping me housed at this facility…."[37] Verdin's retaliation claim regarding not being transferred fails every factor. Verdin does not identify what constitutional right he was attempting to exercise that forms the basis of this alleged retaliatory inaction. Verdin also cannot show that he is being intentionally retaliated against or that there is causation because he is merely being housed at the same facility. There is also no support for the assertion that a refusal to transfer an inmate can form the basis of a retaliation claim or that such inaction is greater than *de minimis*. Generally, with respect to transfers, a transfer to a more dangerous unit may be greater than *de minimis*, but the refusal to transfer does not rise above the *de minimis* threshold.[38] Further supporting this conclusion is the fact that "[a]n inmate generally has no constitutional right to be imprisoned in any particular institution, even if life in one institution is less desirable."[39] Accordingly, Verdin cannot demonstrate that his continued confinement at Dixon Correctional Institution, rather than another institution, is an act of retaliation.

Verdin also alleges he was placed on suicide watch in retaliation for his continued filing of ARPs.[40] The filing of grievances is a protected First Amendment activity. However, Verdin's allegations themselves disprove that but for the retaliatory motive the action would not have occurred because he specifically alleges he requested being transferred and was transferred to suicide cells, where officials opined he may be safer on suicide watch because there is no such

---

[37] R. Doc. 8, p. 3.

[38] Retaliation could be actionable where the prisoner is forced to endure extreme hardship or is subjected to a greater risk of bodily harm, but that is simply not what Verdin has alleged. *Compare Bibbs v. Early,* 541 F.3d 267, 272 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours on four consecutive nights was more than *de minimis* ); *Parker v. Carpenter,* 978 F.2d 190, 192–93 (5th Cir. 1992) (transfer from low-risk minimum security section of jail to the overcrowded violent inmate section was actionable retaliation); *Jackson v. Cain,* 864 F.2d 1235, 1239, 1248 (5th Cir. 1989) (transfer from light labor job to a feed lot involving dangerous and intense work may state claim for retaliation).

[39] *Boudreaux v. Foti*, 68 F.3d 472, 472 (5th Cir. 1995).

[40] R. Doc. 8, p. 12.

thing as protective custody at DCI.[41] Accordingly, Verdin cannot show that but for the retaliatory motive the adverse action would have occurred. Additionally, Verdin has not demonstrated facts to indicate that the transfer to the suicide cells was a greater than a *de minimis* act. Generally, a transfer without demonstrating that some sufficient hardship was suffered because of the transfer will not be greater than *de minimis*, unless the transfer is to a more dangerous section of the prison or something similarly severe.[42] To the contrary, in this case, it appears Verdin was transferred to a section of the prison where he was safer. Despite an opportunity to amend, Verdin does not indicate what restrictions he faced while on suicide watch except that he could not contact his family for a month. Claims akin to this, such as a loss of phone privileges for twenty-two days have been found to be *de minimis* and insufficient for a claim of retaliation.[43] Thus, Verdin's claim that he was retaliated against because he was transferred to the suicide cells fails to state a claim.

### D. Verdin Cannot State a Claim for the Handling of his Grievances

Verdin also complains that his ARPs were ignored.[44] This is, fundamentally, a complaint about the prison grievance process. Verdin has no right to have his prison grievance proceedings properly investigated, handled, or favorably resolved,[45] and there is no procedural due process right in such a claim. As explained in *Geiger v. Jowers,* there is no federally protected interest in having a prison grievance resolved to the prisoner's satisfaction:

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did

---

[41] R. Doc. 8, p. 12.

[42] As with the claim regarding the defendants' failure to transfer Verdin to another prison, the claim regarding the transfer to suicide cells is simply not severe enough to surpass the *de minimis* threshold. *See* n. 38 *supra*.

[43] *Preston v. Bass*, No. 25-117, 2025 WL 1572442, at *19 (W.D. La. May 15, 2025).

[44] R. Doc. 8, p. 13.

[45] *Mahogany v. Miller,* 252 Fed.Appx. 593, 595 (5th Cir. 2007), citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (dismissing as frivolous a prisoner's claim that his due process rights were violated when his prison grievances were refused, noting that a prisoner does not have a protected liberty interest in the processing of his grievances).

not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[46]

Therefore, any federal claim that Verdin attempts to bring based on the way his administrative grievances were handled lacks a basis in law and should be dismissed.[47]

### E. Further Leave to Amend is Not Warranted

Though "[o]rdinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed…[g]ranting leave to amend…is not required if the plaintiff has already pleaded her best case."[48] Verdin was already provided with leave to amend and given specific instructions on amending his complaint, yet he still failed to provide the Court with facts sufficient to state a cognizable federal claim. Endless leave to amend is not required, so Verdin should not be provided with further opportunities to amend.

### F. Exercise of Supplemental Jurisdiction Should be Declined

Finally, to the extent that Verdin's allegations may be interpreted as a request for this Court to exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had

---

[46] 404 F.3d at 373-74 (internal citations omitted).

[47] To the extent Verdin never received responses to his ARPs, he is permitted to proceed to the second step in the grievance process and then to this Court under the Louisiana rules related to the handling of administrative grievances. In other words, a prisoner is not required to wait for a response for any longer than the prescribed time period before proceeding to the next step in the process.

[48] *Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (internal quotation marks omitted).

10

original jurisdiction, or for other compelling reasons.[49]  Having recommended dismissal of any federal claims in this case, it is appropriate to decline supplemental jurisdiction over any potential state law claims.

### RECOMMENDATIONS

**IT IS RECOMMENDED** that all Plaintiff Solomon J. Verdin, Jr.'s federal claims be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim upon which relief may be granted; that the Court decline to exercise of supplemental jurisdiction over potential state law claims; and that this case be **CLOSED**.[50]

Signed in Baton Rouge, Louisiana, on November 12, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] 28 U.S.C. § 1367.

[50] Plaintiff Solomon J. Verdin, Jr. is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Should this Report and Recommendation be adopted, the Ruling in this matter will count as a strike.